VINCE MECONE v. MEMPHIS COTTON REFINING CO., et al.

Western Section. December 20, 1926.

No petition for Certiorari was filed.

1. **Evidence. Evidence that was not positive admitted by the Chancellor in a case tried before the chancellor, held properly admitted.**
     In an action to declare a trust in certain money, where some evidence admitted by the chancellor was not definite, but the questions were answered, with "I suppose so," held that in view of the facts that the case was tried before the chancellor, without the aid of the jury, the admission of the evidence was not reversible error.

2. **Trusts. Evidence. Evidence held not sufficient to create a trust.**
     In an action to recover on notes where the evidence showed that the money had been loaned to one company for the purpose of building warehouses on the land on which a deed of trust was given to secure the notes and it was understood that the building of the warehouses was to be a part of the consideration for making the loan and where the evidence showed that the major portion of the money was turned over to another company, and was not used in building and the plaintiff sought to establish a trust in the fund and recover from the company to whom it was paid, held that although some of the officers in both companies were the same men, the plaintiff's evidence did not show notice to the company receiving the money of the purpose for which it was to be expended and therefore no trust was created.

Appeal from Chancery Court, of Shelby County; Hon. Wightman Hughes, Chancellor.

Affirmed.

Wilson, Gates & Armstrong, of Memphis, for appellant.

Bryan & Brode, of Memphis, for appellee.

OWEN, J.    Vince Mecone has appealed from a decree of the chancery court dismissing his bill against the Wilson-Ward Company, a corporation, located in the city of Memphis.    There were other defendants sued with the Wilson-Ward Company, and appellant procured a judgment against the other defendants, but they have not appealed.    Complainant's bill was filed the first day of August, 1923. The bill alleges that appellant (hereinafter called complainant) is the holder of four notes signed by the Memphis Cotton Refining Company, dated July 2, 1920; one note for $20,000, payable July 2, 1923, and three notes for $200 each, payable July 2, 1922, January 2, 1923, and July 2, 1923.    These notes evidenced a loan made by appellant to the Memphis Cotton Refining Company of $20,000, secured by a deed of trust on property of said Company in the city of Memphis.    The loan was made and appellant was induced to purchase the notes upon the representation and agreement of the Memphis Cotton Refining Company and R. S. Bryan and S. T. Speers that the proceeds of the notes were to be expended in the construction of two additional steel and concrete buildings on the property on which the deed of trust was given securing said notes, and this was the inducing cause of the loan, the property not being worth the amount of the loan in the absence of such improvement.

R. S. Bryan, who was the president, and S. T. Speers, who was the general manager, of the Memphis Cotton Refining Company, were made parties defendant to the original bill.

At the time of the making of the loan, the Memphis Cotton Refining Company gave to appellant a bond in the penal sum of $20,-000 to guarantee the construction of this improvement, Speers and Bryan being sureties on said bond.

Later, in consideration of the surrender of this bond, another bond was given on August 2, 1921, in the same sum guaranteeing the completion of one of the buildings prior to July 1, 1922, Speers and Bryan both being sureties on this bond.

Complainant alleges that he purchased the notes executed by the Memphis Cotton Refining Company, which notes were payable to "ourselves" executed by the defendant Memphis Refining Company, and endorsed by it.    The notes are found as exhibits in the transcript.    They bear the signature of Memphis Cotton Refining Company by R. S. Bryan, president, and John J. Mulroy, secretary, and are endorsed on the back in the same manner, and by the same parties who executed them.

Default was made in the payment of the interest on the principal note of $20,000 due July 2, 1922, and in the installment of interest due January 2, 1923, all of the indebtedness was declared

due, the trust deed was foreclosed, and the net amount realized from the foreclosure of sale of $9,014 was credited on the principal note.

Recovery was sought against the Memphis Cotton Refining Company of the amount due on the notes from the defendants, Bryan and spears as sureties on the bond, and from Wilson-Ward Company because of the fact that it received the moneys from the defendant, Memphis Cotton Refining Company, with knowledge of the trust impressed on them, the amount received, $15,000, being more than the balance due complainant, which is $10,985.60.

It is the contention of appellant that the $15,000 was received by Wilson-Ward Company with full notice and knowledge of the purpose for which the money had been received by the Memphis Cotton Refining Company and of the trust impressed upon it.

The bill alleged that the trust deed had been foreclosed, which trust deed had been executed by the Memphis Cotton Refining Company and complainant had received something more than $9,-000 on his indebtedness, leaving a balance due of $10,985.60. The prayer of the bill was in accordance with the allegations—prayer for judgment against the Memphis Cotton Refining Company for the balance due; against Bryan and Speers as sureties on the indemnity bond, and against the Wilson-Ward Company for the reason that it had accepted $15,000 of complainant's money from the Memphis Cotton Refining Company on the indebtedness of said Company to the Wilson-Ward Company; that R. S. Bryan, the president of the Memphis Cotton Refining Company was also president of the Wilson-Ward Company, and he was familiar with all of the facts and conditions surrounding the loan of complainant to the defendant Memphis Cotton Refining Company and the purposes for which the loan was procured—the erection of buildings upon the lot owned by the Memphis Cotton Refining Company.

The Wilson-Ward Company filed an answer in which it denied that it had any knowledge of any trust character impressed upon any funds borrowed from the appellant by the Memphis Cotton Refining Company and stated that the Memphis Cotton Refining Company was managed exclusively by S. T. Speers. The Wilson-Ward Company was a cotton factor, receiving cotton from the Memphis Cotton Refining Company, advancing money to it, and generally acting as a financial agent of this company.

The Wilson-Ward Company admitted the receipt of the $15,000, but stated that it had been deposited with them by the Memphis Cotton Refining Company, which was at that time indebted to them, in the same way that other funds were deposited, was not impressed with any trust character, was treated as any other funds, and because of said payment, which reduced the indebtedness of the Mem-

phis Cotton Refining Company to the Wilson-Ward Company, the later company subsequently paid out for the account of the Memphis Cotton Refining Company considerably more money than the $15,000, part of which was used to pay for the buildings.

Originally a joint answer was filed by R. S. Bryan and S. T. Speers, in which they admitted the execution of the bond by them, that the foreclosure had been had, and that there was on the face of the notes the balance due as set out in the bill. The answer further set out that because of the financial condition of the Memphis Cotton Refining Company, and financial conditions generally, that Mecone agreed to foreclose the property and hold it in trust for the defendants, so that they would have an opportunity of making a better sale than could be had under a foreclosure.

At the outset of this litigation, it appears that the Memphis Cotton Refining Company, the Wilson-Ward Company and the two sureties, Bryan and Speers, had the same counsel who filed answers for the three defendants. After the answers were filed, the defendant S. T. Speers procured the consent of the court to withdraw his joint answer with his co-defendant R. S. Bryan. He employed other counsel and filed a separate answer. In this separate answer he admits that the allegations of the bill were substantially correct "except any and all allegations of any fraud, collusion or misconduct on the part of this defendant in connection with the co-defendant, Wilson-Ward Company."

He further averred in regard to the foreclosure that it had been had as stated in the joint answer theretofore filed by him and R. S. Bryan, with the idea that the property would be held in trust until it could be resold at greater advantage.

The Memphis Cotton Refining Company filed no answer, and at the hearing a judgment was rendered against it for the amount of the deficiency, but denying any relief against the Wilson-Ward Company, for the reason that the proof did not show that the Wilson-Ward Company received the funds with any knowledge of a trust character impressed upon them. Judgment was rendered against R. S. Bryan and S. T. Speers as sureties on the bond for an amount "equal to the difference between the value of the property described in the original bill and covered by complainant's mortgage and trust deed, as of the 2nd day of July, 1922, and what its value would have been as of said day had the improvements on same been completed according to the terms and tenor of the bond."

A reference was had to the clerk and master to ascertain the amount of liability of R. S. Bryan and S. T. Speers.

Complainant filed a petition to rehear, which was disallowed, wherein complainant sought to hold the Wilson-Ward Company liable. Upon the report of the master in pursuance of the order of refer-

ence, he reported that Bryan & Speers were liable to the amount of $6294.25. Exceptions to this report were overruled and judgment entered against these two defendants for the amount the clerk and master had reported. The complainant excepted to the decree dismissing his bill as to the Wilson-Ward Company, prayed and was granted an appeal to this court, and has assigned seven errors.

The first four errors go to the action of the court in dismissing complainant's bill, so far as it affected Wilson-Ward Company, and in not holding that the $15,000 paid by the Memphis Cotton Refining Company to the Wilson-Ward Company was impressed with a trust in the hands of Wilson-Ward Company and in not holding that the $15,000 was a trust fund borrowed for a specific purpose and that Wilson-Ward Company had full knowledge of its trust character; and in not holding that the complainant had established these facts which he had alleged in his bill was sustained by a preponderance of the evidence. The fifth, sixth, and seventh assignments of error complain of the action of the court in overruling complainant's exceptions to certain testimony, the fifth being in regard to the testimony of the witness J. J. Mulroy and the sixth and seventh in regard to the testimony of the witness S. T. Speers. Said assignments are as follows:

"5. The court erred in overruling appellant's exception to the following testimony of J. J. Mulroy, to-wit: 'Q. For instance, this here shows two hundred and sixty-five bales received between July 6, 1920, and July 6, 1921, and shows the first loan was first received September 30, 1920—the first cotton? A. September 30, 1920. Q. That is what I say—I am asking if that is correct? A. Uh, huh. Q. In all probability that was bought prior to July 6, 1920? A. Not necessarily. Q. You don't know about that? A. Sir? Q. Was it before or after? A. I would be almost positive it was bought prior to June 30, 1920. Q. How can you tell that? A. I can't tell, but I would be almost positive. I don't think he bought much cotton before that.' "

"6. The court erred in overruling appellant's exceptions to the following testimony of the witness S. T. Speers. 'Q. And you told him you still owed on one of the buildings? A. I believe I did—I told him part of the money was to pay for that building already up.

"7. The court erred in overruling appellant's exceptions to the following testimony of the witness S. T. Speers: 'Q. Now, as a matter of fact, the first time Mr. Mecone began to ask for any direct assurance that this money should be used for buildings was when you defaulted in the interest, wasn't it? A. I suppose so. Q. That was about a year after the first loan? A. I suppose so.' "

It is insisted that all of this evidence excepted to as to both witnesses is a matter of opinion, and conjecture, and not based upon

the actual knowledge of the witness. This evidence, is not, of course, of the highest and best probative force. There was no jury in the lower court, and we are of opinion that the Chancellor gave to this evidence just such weight as he deemed proper. The witness Speers, in another part of his testimony, gives his answer "I suppose so," and there was no objection. These witnesses were examined some years after the trust, the notes, the bond and the check to the Wilson-Ward Company had been executed and delivered. They were business men and were connected with hundreds of business deals, various and sundry transactions, and it was hard for them to carry these matters in their minds and be absolutely certain as to the various transactions surrounding the loan made by complainant, disbursement of the proceeds, and as to why the loan had been procured. It was not error for the Chancellor to admit the testimony complained of, and the fifth, sixth and seventh assignments of error are overruled.

It appears that ten witnesses gave their depositions. The complainant and the defendant R. S. Bryan gave two depositions each, both being recalled.

We find the facts surrounding this litigation, as follows: On July 2, 1920, the complainant loaned the Memphis Cotton Refining Company the sum of $20,000, which amount included brokerage, and received as evidence of the loan a principal note for $20,000 due July 2, 1923, and other notes of $200 each, representing the interest. This loan was secured by a deed of trust on the real estate of the Memphis Cotton Refining Company, which operated a plant called a pickery, in South Memphis. The trust deed provided that in the event of default in the payment of any of the notes for interest or otherwise, the trust deed could be foreclosed. The real estate conveyed to secure complainant had cost the Memphis Cotton Refining Company about $27,000. The defendant R. S. Bryan was president of the Memphis Cotton Refining Company. The defendant Speers was the manager of the Memphis Cotton Refining Company. Mr. Bryan gave very little personal attention to the said company. His chief business was acting as president of the Wilson-Ward Company, cotton factors, and whose place of business was located in a different part of Memphis to that of the Refining Company. At the time the loan was made by complainant to the Refining Company it appears that the title department of the Union & Planters Bank of Memphis represented complainant. guaranteeing the title to the real estate conveyed and the defendant Speers executed as surety thereon a bond to the complainant, agreeing that the money borrowed should be used in erecting certain buildings which would be an improvement on the property of the Memphis Cotton Refining Company. This bond was executed at the time the loan was made. It doesn't

appear in the record, and it is not absolutely certain as to who in addition to Speers executed the bond to protect complainant at the time the loan was made. The Memphis Cotton Refining Company executed a bond by R. S. Bryan, president, John J. Mulroy, secretary, and R. S. Bryan and S. T. Speers, sureties, on the 2nd day of August, 1921, which bond was in the sum of $20,000, payable to Vince Mccone, complainant herein, "his heirs and assigns." The conditions of the bond executed August 2, 1921, is as follows:

"THE CONDITION of the foregoing obligation is such that, Whereas, the above bounden principal on the 2nd day of July, 1920, borrowed from the said Vince Mecone the sum of $20,000, to secure the repayment of which together with the interest and charges thereon, executed its certain trust deed conveying in trust certain real estate in the city of Memphis, county of Shelby and State of Tennessee, known and described as Lots 18, 19 and 20, Block 64, Fort Pickering Subdivision, located at the Northeast corner of Kentucky street and Illinois avenue, and upon which there in (is) now situate one steel and concrete warehouse;

"And, Whereas, it was a part of the consideration for the making of said loan that said sum was to be used and expended in the construction of two additional steel and concrete buildings on said premises at a total cost of approximately $20,000.

"And, Whereas, during the period of time since the making of the above-mentioned loan general economical and financial conditions have been such that the construction of said buildings would not have been feasible or to the best interest of the above bounded principal;

"And, Whereas, in consideration of the surrender of a certain bond made and executed by the parties hereto on July 2, 1920, the extension of the payment of interest notes or coupons on the above-mentioned indebtedness which matured July 2, 1921, to January 2, 1922, the above-bounden principal by and through its officers, has agreed to complete in all details and have ready for occupancy on or before July 1, 1922, that one of said above-mentioned steel and concrete buildings for which the foundation has already been laid and constructed,

"Now, Therefore, if the above-bounded principal shall, on or before July 2, 1922, have completed in all details, ready for permanent occupancy, free from all mechanics, laborers or furnishers liens, that one of the above-mentioned buildings for which the foundation has already been laid and constructed; and shall perform all of the terms and conditions of the above-mentioned trust deed, then this obligation shall be void and of no effect otherwise to remain in full force and effect."

The proof shows that the complainant had his dealings with the defendant Speers, and Speers made certain representations to the

complainant about improving the property. The representations and communications had between complainant and Speers, coming to the knowledge of the defendant R. S. Bryan, is one of the matters in dispute.

After the money was paid over by Mecone to Speers, it was deposited in the National City Bank, and Mr. Speers gave a check on that account to the Wilson-Ward Company for $15,000. This check Mr. Speers insists was given at Mr. Bryan's insistence, a fact which Mr. Bryan vigorously denies.

The check was taken by Mr. S. T. Speers to the office of the Wilson-Ward Company, and turned over to Mr. J. J. Mulroy, the secretary-treasurer of that company, at which time Mr. Mulroy was told to place it to the credit of the Memphis Cotton Refining Company, and nothing was said about the money being intended for any special purpose, or to the effect that it should be kept as a special deposit.

During the year following the deposit of this $15,000 check with the Wilson-Ward Company, it continued its business with the Memphis Refining Company as theretofore, and received from the Memphis Cotton Refining Company two hundred sixty-five additional bales of cotton, but all of this cotton was cotton upon which the Wilson-Ward Company had advanced money, the method of the cotton refining company's operation being to buy cotton of low grades, which was refined and put into better condition by various processes. The Memphis Cotton Refining Company did not buy any late cotton until 1922, their efforts being confined to buying cotton of law grade to be refined, and therefore they had no high grade cotton on hand until after 1922.

During the year after the Wilson-Ward Company had received the $15,000 check, they advanced the cotton refining Company $17,-742.87, of which amount $6,703.24 was cash turned over to the Memphis Cotton Refining Company for various purposes, and the balance consisted of insurance, interest, taxes and sundry merchandise.

The grades of cotton of the character consigned to the Wilson-Ward Company by the Memphis Cotton Refining Company declined very rapidly in value, and only five bales of their cotton were sold during the year immediately following the deposit of the $15,000 check. Most of their cotton was carried over until 1922, when it was sold at such prices that the Memphis Cotton Refining Company was at the time of the trial largely indebted to the Wilson-Ward Company.

It also appears that Wilson-Ward Company advanced $9,961.63 to purchase the lot owned by the Memphis Cotton Refining Company.

The disputed issue is, whether the money was impressed with the trust for certain specific purposes under the circumstances by which it was loaned by the complainant to the Memphis Cotton Re-

fining Company and whether the knowledge of such specific purposes, if they did exist and were created by and between the complainant and the Memphis Cotton Refining Company, represented by and through the defendant Speers, was conveyed to the defendant Wilson-Ward Company, so as to make it liable by reason of having received the trust fund; and further so impressed with ·a trust that it could not be used towards paying or liquidating the debt of the Memphis Cotton Refining Company to the Wilson-Ward Company.

It appears that the Memphis Cotton Refining Company had a capital of $6000. The defendant Speers owned one-half of the stock, the defendant Bryan one-third and a Mr. Bowles owned one-sixth. It was organized in 1916. The Memphis Cotton Refining Company was supposed to get cotton that would come off the wagons, and they made a business of buying up irregular cotton, cotton damaged by fire or otherwise, and taking it to their plant where it would be mixed with other cotton and the defendant Memphis Cotton Refining Company would place all together. They were also prepared to take different lints in the same bale, run it through a machine and place it and have it all of an even running staple—taking the trash out of the cotton and making the staple more uniform, which process was .known as "refining cotton."

The defendant Speers has been the manager of the Memphis Cotton Refining Company since its organization, and the defendant Bryan was the president from the time it was organized. Mr. Bryan had also been president of the Wilson-Ward Company since 1912. Mr. John J. Mulroy was the secretary of both corporations—Wilson-Ward Company and the Memphis Cotton Refining Company. He owned no stock or interest in the Refining Company, and gave it no attention except to sign papers and documents such as it was necessary for a secretary to sign.

In 1919, when the price of cotton reached its peak—the highest since the Civil War—the Memphis Cotton Refining Company undertook to expand its business. It bought a lot—the one upon which the complainant took a trust—for $10,000; erected one building on this lot and undertook to erect two other buildings. ·Most of the purchase price of the lot ($10,000) was advanced by the Wilson-Ward Company. Said Company acted as a cotton factor for the Memphis Cotton Refining Company, and also as its banker. As a cotton factor, the Wilson-Ward Company accepted the cotton that the Memphis Cotton Refining Company bought and ginned. After it had been made into bales the Wilson-Ward Company would place the bales in various warehouses. The Memphis Refining Company would draw drafts or checks on the Wilson-Ward Company for the purpose of paying for the cotton that it would buy in the seed or cotton that it would buy that was damaged, and which would be rebaled and

refined. The Memphis Cotton Refining Company would also draw checks upon the Wilson-Ward Company for its running expenses, pay rolls, etc.

In the summer of 1920 it appears that the cotton market in Memphis and in the south generally became very inactive, and on July 6, 1920, the Memphis Cotton Refining Company had, with Wilson-Ward Company 654 bales of cotton. During the twelve months following, July 6, 1920, the Memphis Cotton Refining Company placed with Wilson-Ward Company 265 bales of cotton. On July 6, 1920, the Wilson-Ward Company was carrying 12,812 bales of cotton. This was more than this company usually carried over at this season of the year, or had on hand at this season of the year. For some years prior thereto it was shown that, during the midsummer this concern would have nine or ten thousand bales on hand. The Memphis Cotton Refining Company owed the Wilson-Ward Company July 6, 1920, a little more than $52,000, which account was to be credited with the proceeds of the 654 bales of cotton, when sold. During the twelve months following July 6, 1920, or from August 10, 1920, to January 28, 1921, the Wilson-Ward Company advanced the Memphis Cotton Refining Company $6713.24, in cash, and also charged the said company with the following:

| | |
|---|---:|
| Insurance | $2035.96 |
| Interest | 4496.98 |
| City taxes | 312.50 |
| Income taxes | 1730.37 |
| Sundry merchandise | 641.50 |
| Loose Cotton purchased | 2012.32 |
| Cash advanced, (above set out) | 6713.24 |
| Total | $17942.87 |

During this time the Memphis Cotton Refining Company was credited with the following:

| | |
|---|---:|
| July 6, 1920 | $15,000.00 |
| Sales of cotton | 943.34 |
| Insurance canceled and refunded | 282.95 |
| For ginning | 279.67 |
| Total | $16,505.96 |

We find that just prior to the execution of the trust deed on July 2, 1920, the Wilson-Ward Company wanted the Memphis Cotton Refining Company to make a long loan on its real estate so that the Wilson-Ward Company would not have tied up the $10,000 they had advanced for improvements on the lot. Thereupon Mr. Speers sought to get a loan. He came in contact with a Mr. Slater, and Mr. Slater recommended that the complainant could be induced to make the

loan. ,The complainant, in making the loan at no time dealt with Bryan—all of his dealings or negotiations being had with the defendant Speers. Complainant turned over the preparation of the trust deed and notes and all the details to the title department of the Union & Planters Bank. The manager of the title department at that time was Mr. Guy P. Long. Mr. Long gave his deposition, but he does not remember the transaction, as the details were worked out by an assistant to Mr. Long, an attorney, Mr. John J. Lindsey. We quote from Mr. Lindsey's testimony as follows:

"Q. What, if anything, did you have to do with a transaction between the complainant and the Memphis Cotton Refining Company, relative to the loan of $20,000 to the Memphis Cotton Refining Company on property at Fort Pickering, at the intersection of Kentucky street and West Illinois avenue? A. As attorney for the Union & Planters Bank & Trust Company, Title Department, I examined that title and closed the loan. Q. Mr. Lindsey, at that time was there anything said about the application or disposition of the proceeds of the loan, and if so, by whom, what was it, and what was done by you in connection with that? A. I don't think there was anything said prior to the day that the title was approved for the loan and the disbursement was to be made; then the question arose as to the disposition of the proceeds. Q. Did you discuss it with anyone, and if so, with whom? A. I discussed it with Mr. Mecone, and Mr. S. T. Speers. Q. Were they present and had conversation with you or discussion with you, together, at different times? A. Mr. Speers and Mr. Mecone were there together. Q. What was said, and what took place, if you recall? A. I don't recall what was said, but the result of the transaction and the conference was that an additional building to the one already on the premises was agreed to be built. And on the same day there was a bond entered into by the borrower and signed by Mr. Speers and Mr. Bryan as sureties, guaranteeing the erection of this building as described in this bond, type of building to be erected. Q. What was said about consummating the loan, as to whether or not the loan would be consummated, and Mr. Mecone would make it, if the Cotton Refining Company had not agreed to use it for the particular purpose? A. Well, I don't recall that Mr. Mecone declined to make it, but that was one of the conditions of the making of the loan, that this was to be used in the erection of this additional building. Q. In that matter, were you looking after the interests of Mr. Mecone, or the Memphis Cotton Refining Company? A. Mr. Mecone, and the Union & Planters Bank. Q. How was it that a bond was demanded, or taken at that time? At whose suggestion, or how did that come up? A. It was taken at the suggestion of Mr. Long, as a solution to the problem of securing the proper disbursement of the proceeds. That is the only way I

discussed it with Mr. Long, who is manager of the department, and my immediate chief.

. . . . . . .

"Q. Now, have you a copy of the bond of July 2, 1920? A. I have not been able to locate it. I still think that it is in my files, but I was unable to locate it in the bank file on this transaction. Sometime after the closing of this, I went away and was in Florida for six months, and my files became very much disarranged, especially those files. Q. I will ask you to make a search for the copy of the former bond, and if you find it, to attach it to your deposition and make it exhibit number two? A. I will be glad to do so. Q. Now, Mr. Lindsay, at the time you took this new bond on August 2, 1921, which has been made exhibit number one to Mr. Speers deposition and also exhibit number one to your deposition, what information or knowledge of any kind did you have as to what disposition, if any, had been made of the proceeds of this loan by Meconi to the Memphis Cotton Refining Company? A. I had no knowledge or information. Q. Did you in August of 1921 see Mr. Bryan or Mr. Speers, or both of them in person? A. I could not say what month it was, but I saw both of them in person a number of times after the making of the loan and prior to the taking of that bond."

On cross-examination said witness testified, as follows: Q. And did you know of any of the circumstances surrounding the failure to erect the building? A. I didn't know why it had not been erected. Q. And as I understand you, your recollection is that the original called for the erection of two buildings? A. perhaps. Q. Well, this bond, the one now offered, refers to 'That one of the said above-mentioned steel buildings;' there were two buildings originally called for, weren't there? A. I am not sure, if I can get the copy of that bond, that will be more definite, there was a building or improvement to be erected under the terms of the original bond. Q. Well, the recitals of those bonds are correct, are they not? A. Yes, sir. Q. And this recites that the same was to be obtained for two buildings, that is correct—that is all the original bond required? A. Yes sir. Q. And this bond calls for the completion of one building doesn't it? A. I think that was in the way of a compromise. Q. And do you know what the cost of the two buildings was to be? A. Approximately $20,000, according to the figures of Mr. Speers. Q. And the cost of the two buildings was to be about the same each, wasn't it? A. No. Q. What was the difference? A. The cost of the improvements that were to be put on there, both under the original bond and this bond was to be approximately $20,000. Now it may be that Mr. Mecone waived the construction of one of those buildings at the second time. Q. In other words that estimate there drawn contains the entire understanding of the

parties, and its recitals as to the prior bond are correct? A. Yes, sir.''

We find in Mr. Speer's testimony, the following: ''Q. Mr. Speers, how was it that you came to give a check to Wilson-Ward for $15,-000 of this money when it had been loaned upon the agreement that it would be used for the construction of these buildings, or completion of them? A. Well, Mr. Bryan is president of my concern, and he asked me to give them a check for $15,000, and at the time I didn't seriously object, because they promised to pay it back as we needed it, for the buildings—putting up buildings or paying for material. Q. By the way, at the time you received this check for $19,500, deposited at the National City Bank, did the Memphis Cotton Refining Company carry any other bank accounts than in the National City Bank? A. No sir. Q. That was the only bank account? A. Only bank account. Q. At that time did the Memphis Cotton Refining Company have any cash moneys on hand save and except those deposited in the National City Bank to its credit? A. Not a bit—not a cent. Q. Do you know about what the amount of its cash on hand was when you deposited and received this $19,-500? A. How much? Q. Yes? A. I couldn't tell you now. I haven't any idea. Q. Will your books show it? A. Yes sir. I can get it for you at the bank. We didn't have very much cash at any time. Q. What do you mean by very much. What is your idea? A. We didn't carry a big bank account. Q. Well, about what did your balance run? A. Sometimes a couple of days a couple of thousand dollars, and then it would get down to nothing almost. Q. Do you know what knowledge, if any, Mr. R. S. Bryan had about the agreement that this money was to be loaned to erect— for the erection of these improvements? A. I suppose he knew as much about it as I did. He was a party to it. Q. How was it that you came to negotiate for a loan—negotiate or take up the idea of borrowing $20,000? Was it at your suggestion, or Bryan's, or what? A. Well, it was accomplished because we were in the midst of a tight—building and trying to put up some new buildings and we had to have some money to complete them, so when I found Mr. Mccone had the money to lend, I told Mr. Bryan we were going to borrow it from him, and we did. Q. Tell him for what purpose you were going to borrow it? A. To pay for the buildings we had started—to erect them. Q. When Mr. Bryan asked for and you gave him this check for $15,000, for Wilson-Ward & Company, what did he know about where this money had come from—the source of it? A. Why he was at the—When we made the trade at the bank, he perhaps was there. I don't remember whether he was there that day, or not, but he knew we were doing it, because I didn't make any trade of any kind without consulting him.''

We should state that the Memphis Cotton Refining Company only received $19,500 of the $20,000 loan. The remaining $500 went to pay commissions. It seems that Slater received a commission, as did complainant. He (complainant) said he thought he received $125 or $225 of the $500. He also had received a second trust to secure $1200, which was excess interest of 2% for three years.

It appears that the Wilson-Ward Company, on behalf of the Memphis Cotton Refining Company paid all of the interest that was paid to complainant—$1600 at one time, and at another time a payment of $800. Upon the reference to the clerk and master, there was a report that the value of the property covered by complainant's trust deed on July 2, 1922, was as follows:

"Value of ground .................. $14160.00
"Value of improvement ............  1500.00
                                   _____
                          Total    15660.00

Had the improvements been finished as contemplated then the value of said property would have been as follows:

Value of ground .................. $14160.00
Value of improvements ...........  7794.25
                                  _____
                          Total    $21954.25

Recapitulation

Value with improvements completed
    as contemplated ................ $21954.25
Value as existed July 2/22 .........  15660.00
                                     _____
                        Difference    $6294.25

So, if the improvements had been made on said property according to the terms and tenor of the bond, Exhibit No. 1 to the deposition of John J. Lindsey, the value of said property on July 2, 1922, would have been $6294.25 greater that it was with said buildings uncompleted."

While this report was confirmed by the Chancellor as to valuations, we find evidence in the record tending to show that the property is worth from twenty-five to thirty thousand dollars. The complainant purchased the property at the sale made by the trustee but he has stood ready and willing to make a deed to any party or parties designated by the defendants for a consideration that would make the complainant whole—not cause him to lose any sum by reason of the loan, and he places his indebtedness or investment at about $24,000. In this is included the $20,000 loan, interest, expenses and attorneys fees in this litigation, which amounts to about $1500.

The witness Speers is contradicted by Mulroy and Bryan as to the manner in which Wilson-Ward Company received the $15,000.

Both of these witnesses testify that Speers brought the check for $15,000 to the office of Wilson-Ward Company, turned it over to Mr. Mulroy, and asked the Memphis Cotton Refining Company be given credit for this amount. Mr. Mulroy is very positive in his testimony as to this part of the transaction. We quote from Mr. Bryan's testimony as follows:

"A. Well, on July 6th, to the best of my recollection, Mr. Speers came into the office and gave our cashier a check on the National City Bank for $15,000 and told us to credit his account with it. At that time the Memphis Cotton Refining Company had on hand six hundred and fifty-four bales of cotton, against which they owed us $52,620.33. Q. Now, Mr. Bryan, what had been said to you or by you to Mr. Speers, about depositing this $15,000, if anything? A. Well, nothing specifically. He had a running account with us, used us as a bank, our records will show, since 1916. Whenever he needed any money, he would come up and get it, and whenever he had any cotton, would send it in, and we would sell it and apply it to his account. At that time we considered his account in very good shape. There was no pressure brought to bear about having needed this money, except as stated before, I figured that a concern with that limited capital, should have their real estate holdings on a long time loan."

In regard to Mr. Speers' claim that Mr. Bryan, in effect, forced him to deposit the money, Mr. Bryan says:

"Q. Had you made any demand on Mr. Speers, as president of the Memphis Cotton Refining Company, or in any other capacity, that he had to put this $15,000 with you? A. Oh, no. Q. At that time, including the $10,000 for the lot, did you regard the cotton on hand as probably sufficient to pay for the debt? A. Yes, we considered the account all right at that time. . . . Q. State whether or not this $15,000 was treated in any other way than funds arising from any other source, by the Wilson-Ward Company? A. No, it was not." . . . "Q. Now, at the time that you personally made this guarantee, was any suggestion made by anybody that the Wilson-Ward Company should make a guarantee? A. No, sir, not at all. Q. By Mr. Speers, or anybody else? A. Not at all."

As to whether or not Mr. Speers ever claimed the trust fund existed, Mr. Bryan says:

"Q. Did he at that time make any claims that the Wilson-Ward Company had used any trust funds or should advance any money for that reason? A. Absolutely not." . . . "Q. Now, personally, Mr. Bryan, did you personally know of any agreement that this money should be used only for new buildings, until this matter came up in 1921? A. That is the first I know of it. Q. At that time did Mr. Mccone make any request that the Wilson-Ward Company should

guarantee the account? A. Not that I remember. Well, as a matter of fact, I know he did not. Not from me.''

We find that while the Wilson-Ward Company was carrying a large number of bales of cotton in 1920 at the time complainant made the loan, yet the Wilson-Ward Company was not cramped for credit—it was a going concern—and we are of opinion that Mr. Bryan did not sign the first bond. It is true Mr. Lindsey testified that he did, and we are of opinion that he (Mr. Lindsey) honestly thought that the same parties were signing the second bond that signed the first, but Mr. Lindsey said it was a compromise. Mr. Mulroy as secretary signed for the Memphis Cotton Refining Company the second bond (the one in evidence), but he did not sign the first bond. At the time of the execution of the first bond Mr. Speers was in good financial condition. No doubt that his financial condition had depreciated by 1922, as practically all cotton dealers had sustained losses between July, 1920 and July, 1922. The Memphis Cotton Refining Company had failed to pay its interest, and was in default, and complainant wanted further security if he was going to make an extention. In the first bond it was provided that two buildings were to be erected. In the second, by way of compromise, only one building was to be completed.

We are of opinion that Mr. Lindsey delivered the canceled bond to Mr. Speers. Mr. Speers is in possession of the papers of the Memphis Cotton Refining Company. The first bond was never produced. Complainant has failed to show by a preponderance of the evidence that the Wilson-Ward Company had any notice in 1920 of the $15,-000 given to it by Speers was borrowed by him (Speers) for a specific purpose or on condition that it would be used in erecting two buildings.

We are of opinion, furthermore, that much of this $15,000—not the exact fund, of course—was returned by the Wilson-Ward Company to the gin company in the way of advances in meeting the pay-roll for improvements that were placed on this lot after the loan was negotiated. It appears that all of the concrete work, foundations, floors, etc., was done by day labor under the direction and supervision of Mr. Speers.

We are of opinion that the Chancellor gave a proper consideration and weight to all of the testimony, and after a careful review of the entire record, and weighing the testimony here, we have reached the conclusion that the complainant has failed to sustain his right to recover against the Wilson-Ward Company, by a preponderance of the evidence.

It results that all of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed. The defendant Wilson-Ward Company will recover of complainant and

his surety on appeal bond, the cost of the appeal for which execution will issue. The cost in the lower court will be paid as decreed by the Chancellor.

Heiskell and Senter, JJ., concur.